Appellant Terry Richards appeals a decision of the Stark County Court of Common Pleas revoking her community control sanction and imposing a six-month prison term. Appellant assigns three errors:
 I. THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN THE COURT PERMITTED AND CONSIDERED THE DIRECT TESTIMONY OF TWO STATE'S WITNESSES AFTER THE CLOSE OF THE STATE'S PRESENTATION OF SUBSTANTIVE EVIDENCE THEREBY PREVENTING APPELLANT FROM PRESENTING A DEFENSE AND IMPROPERLY CONSIDERING THE TESTIMONY FOR THE PURPOSE OF REVOKING APPELLANT (SIC) COMMUNITY CONTROL.
 II. THE TRIAL COURT'S ORDER REVOKING APPELLANT'S COMMUNITY CONTROL IS CONTRARY TO LAW IN THAT APPELLEE FAILED TO PRESENT SUBSTANTIAL COMPETENT EVIDENCE THAT WOULD WARRANT A VIOLATION.
 III. THE TRIAL COURT ERRED IN REVOKING APPELLANT'S COMMUNITY CONTROL FOR MINOR VIOLATIONS.
On March 31, 1999, the trial court placed appellant on community control. On May 27, 1999, appellant was terminated from the Day Reporting Program due to disrespect to the staff and unwillingness to complete assigned tasks. On June 7, 1999, appellant appeared before the trial court concerning the above violation. The trial court modified appellant's community control to include the Stark County Adult Intensive Supervision Program. The court also increased appellant's service hours from one hundred fifty hours to two hundred fifty hours. On July 7, 1999, the trial court assigned Linda Montor to supervise appellant.
Rule 7 of the community sanction rules required appellant to submit to random drug screens. On Saturday, August 21, 1999, probation officer Renee Wallace administered a random drug test. Appellant tested positive for cocaine and appellant signed an admission form in which she indicated that she tested positive for cocaine. Appellant had previously submitted to approximately eight other random drug screens and all were negative for any controlled substances. The state did not seek revocation of appellant's community control following the positive test result. On October 13, 1999, Linda Montor administered a random urine screen which was inconclusive.
Rule 16 of the community sanction rules required appellant complete two hundred fifty hours of community service. Appellant was required to complete twenty hours per week during weeks she was not employed. The Stark County Day Reporting Program monitored appellant's community service. On October 9, 1999, appellant contacted Beth Atherton to inform her that she could not report for her hours that day. As of this date, appellant had completed seventy community service hours. On October 13, 1999, Linda Montor received a letter from the day reporting program terminating appellant's community service placement for failure to make progress toward community service obligations, noncompliance with the vocational component and appellant's recent arrest.
Rule 8 of the community sanction rules required appellant to report any arrests to Linda Montor. On October 8, 1999, appellant was arrested, on a bench warrant, for failure to appear. Appellant contends the bench warrant should have been issued for a woman by the name of Carmela Luke, who had previously given false information to law enforcement officers regarding her identity. At the time of her arrest, appellant informed the officers that the warrant incorrectly named her as the perpetrator. The officers charged appellant with resisting arrest and took appellant to the Stark County Jail. Upon her release from jail, appellant telephoned Linda Montor and left a message. Appellant did not inform Linda Montor that she had been arrested. The following day, Linda Montor conducted a routine check of the arraignment list for Canton Municipal Court and discovered that appellant had an arraignment for an arrest on October 8, 1999. Linda Montor telephoned appellant and asked her to report to her office. Upon her appearance at Linda Montor's office, appellant was taken into custody.
On October 13, 1999, the state filed a motion for revocation or modification of appellant's community control. The state alleged violations of community sanction rules 7, 8, 16 (A) and 16 (B). The trial court conducted an evidentiary hearing, on the state's motion, on October 25 and 27, 1999. The state presented three witnesses: Linda Montor, Renee Wallace, and Beth Atherton. The state introduced as exhibits: appellant's community control sanction agreement, a judgment entry modifying appellant's original community control sanction, a drug admission statement signed by appellant, and a letter from the Stark County Day Reporting Program. Appellant testified on her own behalf.
Following the hearing, the trial court revoked appellant's community control sanction and imposed a six-month prison term.
Appellant alleges a violation of her state and federal due process rights because of the manner in which the trial court received evidence at the probation revocation hearing. We disagree.
Specifically, appellant maintains the state's presentation of rebuttal witnesses was improper. In Morrissey v. Brewer(1972),408 U.S. 471, the United States Supreme Court established minimal due process requirements in dealing with parole revocation hearings. InGagnon v. Scarpelli (1973), 411 U.S. 778, the Court applied the doctrine of Morrissey to probation revocation hearings. The Court held that probation revocation, like parole revocation, is not a stage of a criminal proceeding, but can result in the loss of liberty therefore requiring that the probationer be accorded due process. The Court also held that a probationer is entitled to a preliminary and a final revocation hearing.
The Court explained that the minimum requirements of due process include the following elements:
 (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole. Morrissey at 489.
As noted above, appellant challenges the order in which the state presented evidence. In State v. McNeill (1998), 83 Ohio St.3d 438, the Ohio Supreme Court explained that rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party and becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence. Id. at 446. It is within the trial court's discretion to determine what evidence is admissible as proper rebuttal. Id. at 446. Thus, we will not reverse the trial court's decision regarding the state's presentation of rebuttal witnesses absent an abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
We find the trial court did not abuse its discretion when it permitted the state to present two rebuttal witnesses. Renee Wallace, the first rebuttal witness, testified that appellant declined to have her urine sample retested. Wallace also stated that appellant willingly signed the form admitting that she had used cocaine. Tr. at 80-89. The state offered this testimony to rebut appellant's testimony presented at the probation revocation hearing. Appellant testified that the probation officer that administered the test told her that if she did not sign the admission form she could go to jail or she could wait for Linda Montor and Linda would take her. Id. at 49, 67. Appellant further testified that she told the probation officer that she would go to Quest and pay for a drug test. Id. at 49. At the hearing, appellant denied using cocaine. Id. Renee Wallace's testimony was necessary to refute appellant's testimony concerning why she signed the admission form.
The second rebuttal witness called by the state was Beth Atherson. Atherson testified that appellant had been terminated from several community service sites for noncompliance. Atherson also testified that she informed appellant that she only had one more chance to comply or that appellant would be terminated from the program. Id. at 97. Finally, Atherson testified that appellant violated the terms of community service by not doing her work, leaving the sites early, using the telephone without permission, not showing up to do the work, and bringing other people with her to the job site. Id. at 99. The testimony of Beth Atherson was necessary to rebut appellant's testimony that she did not know that she had failed to comply regarding her community service. This testimony also rebutted appellant's claim that she did not violate the rules regarding her community service.
Clearly, the testimony of Renee Wallace and Beth Atherson was necessary to rebut appellant's testimony concerning the alleged probation violations. The trial court did not abuse its discretion when it permitted the state to offer this evidence.
Appellant's First Assignment of Error is overruled.
 II
Appellant also contends the trial court's determination that she violated her terms of probation is against the manifest weight and sufficiency of the evidence. We disagree.
The state's burden of proof in a probation revocation hearing is to prove, by a preponderance of the evidence, that the defendant violated a condition of probation. State v. Colvin (Oct. 8, 1996), Stark App. No. 95-CA-76, unreported, at 2; State v. Davis. (Oct. 12 1989), Delaware App. No. 89-CA-17, unreported, at 1. This determination is based on "substantial evidence." Id. The trial court is to determine the credibility of the witnesses. Colvin at 2. A trial court's decision to revoke probation will not be disturbed on appeal absent an abuse of discretion. State v. Smith (Aug. 28, 1995), Richland App. Nos. 94-CA-62, 94-CA-64; unreported, at 4.
Appellant challenges the trial court's reliance on the testimony of Renee Wallace concerning appellant's positive urine test for cocaine. Appellant contends the test results were not admissible because the state failed to lay a proper foundation regarding the reliability of the test and the actual results. In support of this assignment of error, appellant also alleges Renee Wallace never testified regarding the type of test used; the amount of drug needed to trigger a positive result; the time period for consumption which would effect a result; the reliability of the particular testing procedure; and that the test result showed a positive screen for any particular controlled substance.
Appellant also challenges Linda Montor's testimony concerning appellant's probation violations on the basis that Montor read unauthenticated documents into evidence and testified about appellant's alleged behavior of which she had no personal knowledge. We have previously refused to adopt evidentiary standards for drug screens in the area of probation. State v. Robb (May 20, 1993), Muskingum App. No. CA-92-42, unreported. However, even if we were to determine that the state did not lay the proper foundation to introduce appellant's drug results, appellant admitted to using cocaine which is sufficient to establish a violation of her terms of probation.
Appellant also argues, under this assignment of error, that the mere fact of an arrest, without additional evidence, cannot constitute a violation of a community control sanction because the arrest may prove baseless or result in an acquittal. Even if we found the trial court improperly revoked appellant's probation based on her arrest on October 8, 1999, the record in this matter still supports the trial court's decision because appellant failed to complete community services and admitted to using cocaine.
Based on the above, we conclude the trial court had ample evidence to revoke appellant's community control. The trial court's decision is supported by substantial evidence.
Appellant's Second Assignment of Error is overruled.
 III
In her Third Assignment of Error, appellant maintains the trial court erred in revoking her community control for minor violations. We disagree.
Appellant contends she made an effort to perform according to the rules and exhibited an ability to pursue further rehabilitation in the community. Appellant further notes that the motion for revocation was filed as a result of an arrest warrant and not her failure to complete community service hours or her positive urine screen. Appellant had already been before the trial court concerning her participation in the Day Reporting Program. The trial court did not revoke her probation, at that time, and gave appellant additional hours of community service. However, appellant again violated her probation, on three different grounds. The trial court addressed its reasons for revoking appellant's probation on the record.[1] Tr. at 133-138. We find the trial court did not err when it revoked appellant's community control.
Appellant's Third Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
 ____________________ Milligan, V. J.
Hoffman, P. J., and Edwards, J., concur.
[1] The Ohio Supreme Court recognized an exception to the written statement requirement, contained in Gagnon v. Scarpelli, supra, in the case of State v. Delaney (1984), 11 Ohio St.3d 11.